## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOHN DOE 1,** | ) | **CASE NO. 1:20 cv-01695** |
| | ) | |
| and | ) | |
| | ) | |
| **JOHN DOE 2,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JOHN DOE 3,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JOHN DOE 4,** | ) | **PLAINTIFFS' SECOND** |
| | ) | **AMENDED COMPLAINT** |
| and | ) | |
| | ) | **Trial by Jury Demanded** |
| **JOHN DOE 5,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JOHN DOE 6,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **JOHN DOE 7,** | ) | |
| | ) | |
| And | ) | |
| | ) | |
| **JOHN DOE 8,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **THE CLEVELAND METROPOLITAN** | ) | |
| **SCHOOL DISTRICT BOARD** | ) | |
| **OF EDUCATION** | ) | |
| **1111 Superior Avenue East, Suite 1800** | ) | |
| **Cleveland, OH 44114** | ) | |
| | ) | |

and                                    )
                                       )
**BARBARA E. WALTON**                  )
**484 Tally Ho Lane**                  )
**Cleveland, OH 44143**                )
                                       )
and                                    )
                                       )
**ANDREW J. KOONCE**                   )
**19700 South Park Boulevard**         )
**Shaker Heights, OH 44122**           )
                                       )
and                                    )
                                       )
**KENDRA E. HOLLOWAY**                 )
**1458 East 123rd Street**             )
**Cleveland, OH 44122**                )
                                       )
and                                    )
                                       )
**JEFFREY S. MAZO**                    )
**1369 West 85th Street**              )
**Cleveland, OH 44102**                )
                                       )
and                                    )
                                       )
**TERENCE GREENE**                     )
**12405 York Boulevard**               )
**Garfield Heights, OH 44125**         )
                                       )
        **Defendants.**                )

Now come Plaintiffs John Does 1 through 8 and pursuant to this Court's Order of November 12, 2020, allowing parties to be joined by November 30, 2020, file this instant Second Amended Complaint for purposes of adding an eighth John Doe Plaintiff.

## Introduction

Plaintiff John Does 1 through 8 file this Complaint pseudonymously because the prosecution of this lawsuit will compel the Plaintiffs to reveal information of the utmost intimacy arising out of childhood sexual victimization detailed herein.  Plaintiffs allege that Defendants

2

violated Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq.,* as well as various state causes of action included herein as follows.

## Jurisdiction and Venue

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1334 because Plaintiffs allege claims under federal law, specifically Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq.*

2.      Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §1391(b) because the events giving rise to Plaintiffs' claims occurred within this district.

3.      Plaintiffs bring this civil rights lawsuit under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, *et seq.,* because the Cleveland Metropolitan School Board of Education (hereinafter BOE) and former administrators of the Cleveland School of Arts, a creative arts high school within the school district, had actual and construction notice, and were deliberately indifferent to the fact that Defendant Terence Greene, the former director of the dance department at the Cleveland School of the Arts (hereinafter CSA), sexually assaulted and abused dozens of minor students throughout his approximately 15-year career with CSA.  The BOE had actual notice of Defendant Greene's criminal conduct and failed to investigate Defendant Greene or take any actions whatsoever to protect students including John Does 1 through 8, even after complaints of sexual abuse were made against Defendant Terence Greene.

4.      All acts or omissions alleged herein and attributable to CSA or its staff, faculty and/or administrators are done in the course and scope of their employment and/or in the furtherance of the interests of the BOE.  All actions herein alleged against CSA are made against Defendant BOE as CSA is a school that, along with other schools, comprise the "school district."

3

5.      All acts or omissions of all Defendants were done in the course and scope of their relationship with Defendant BOE as an employee, independent contractor, contract teacher, agent, or representative in the furtherance of the interests of Defendant BOE.

6.      Defendant Greene abused Plaintiffs in the CSA building including in the boys dancer's dressing room, in his vehicle while it was parked at the CSA property, at his homes in Euclid, Ohio, Garfield Heights, Ohio, and Cleveland, Ohio, and in hotel rooms during school-related activities.

7.      Defendant Terence Greene "groomed" his sexual victims by manipulating them and building a relationship of trust with them.  His power and reputation in the local and national dance community and at CSA was used to manipulate his victims into engaging in various and repeated sex acts as described herein.

8.      Pursuant to O.R.C. §2907.03, it is a felony of sexual battery to engage in sexual conduct with another "when the offender is a teacher . . . (and) the other person is enrolled in or attends that school."  Defendant Greene's conduct repeatedly violated O.R.C. §2907.03.

9.      Defendant BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo failed to exercise any control or supervision over Defendant Greene and failed to investigate Defendant Greene, even after he was accused of sexual abuse by a CSA student in or about 2003.

10.      Following a criminal case that concluded in 2004 in the Cuyahoga County Common Pleas Court where Defendant Greene was indicted on four counts of "unlawful sexual conduct with a minor,"  where Greene was acquitted in a bench trial, Defendant BOE allowed Defendant Greene to return to CSA and resume his job duties teaching dance to children.  Upon information and belief, no investigation was performed into Defendant Greene's conduct by Defendant BOE

or CSA or any individual Defendants prior to reinstating Greene, in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq.*

11.     Defendant Greene was hired to serve as dance director at CSA in or about 1999 and any student studying dance at CSA was required to receive dance instruction from Defendant Greene every year of their high school education.  Defendant Greene's position of authority over dance students was used by Defendant Greene to manipulate students, including Plaintiffs John Does 1 through 8 to engage in sexual activity with Defendant Greene.   If the sexual abuse from Greene stopped, his victim was required to continue to receive dance instruction from Greene unless the victim left the school.

12.     Defendant BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo concealed, intentionally ignored, acted with deliberate indifference, and failed to exercise virtually any oversight or supervision of Defendant Greene despite credible information that indicated Greene was a threat to students at CSA.

13.     Defendant Greene's *modus operandi* with all Plaintiffs was very similar.  As their main dance instructor, he would gain their trust by building a mentor-mentee relationship whereby Greene would inject himself into his victim's lives and make it known that he could assist their education and professional careers as dancers and in the arts.  Many of Greene's victims had difficult home lives and Greene would manipulate the students to view Greene as a father figure.  Then, using his position of trust and his reputation he would begin a sexual relationship with his student victims.

14.     Plaintiffs take no pleasure or enjoyment in bringing this lawsuit against Defendant BOE and indirectly CSA and CSA personnel.  Plaintiffs attended CSA proudly and many remain proud CSA alumni.

15.     John Does 1 through 8 have filed this lawsuit anonymously due to the highly personal, humiliating and embarrassing circumstances giving rise to their claims.

16.     Plaintiffs John Does 1 through 8 attended CSA expecting the school to provide them with a safe and supporting environment that would nurture their artistic talents and teach skills that would allow them to advance and succeed in their chosen areas of study.

17.     Plaintiffs believed that Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo would make students' safety a primary concern and number one objective of CSA.

18.     In the dance world, dance instructors hold a close, special relationship and confidence with their students, especially younger students.

19.     Plaintiffs and their families trusted Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo to hire teachers and faculty members who would respect and honor the relationship of trust between teacher and student.  Plaintiffs trusted Defendants BOE and CSA to act in their best interests when selecting and hiring teachers and faculty to instruct, teach and supervise their students.

20.     Plaintiffs trusted that Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo would comply with all applicable laws, regulations and requirements related to keeping their students safe, especially from child sexual predators such as Defendant Greene.

21.     Plaintiffs trusted that CSA and Defendants Walton, Koonce, Holloway and Mazo would faithfully, honestly and diligently investigate all circumstances that indicated a teacher or instructor was dangerous or unfit to teach due to sexual predatory behavior or some other reason.

22.     Plaintiffs trusted that Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo would not ignore, hide, disregard, or fail to disclose circumstances that raised

a substantial likelihood that other students, including but not limited to Plaintiffs John Does 1 through 8 were being sexually assaulted, harassed, abused and preyed upon by Defendant Greene, or anyone else.

23.     Plaintiffs expected CSA and Defendants Walton, Koonce, Holloway and Mazo, with a fine reputation in the arts community, to investigate the reports of Defendant Terence Greene's predatory conduct and act appropriately and in accordance with the law regardless of the affect it may have on the CSA reputation.

24.     Plaintiffs relied on Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo to stop the pedophilia and illegal sexual predatory behavior of Defendant Terence Greene that, upon information and belief went on from approximately 1999 until 2014.

25.     Upon information and belief, even after Defendant Greene's 2004 acquittal on four counts of "Unlawful Sexual Conduct with a Minor," and even after other students, including the victim in the criminal case came forward, CSA and Defendants Walton, Koonce, Holloway and Mazo failed to take appropriate actions and allowed Defendant Greene to continue working with children at CSA.

26.     Defendants BOE and CSA betrayed Plaintiffs' trusts and completely failed to meet the legal and ethical obligations it owed to all of its students, including Plaintiffs John Does 1 through 8.  At all times relevant, administrators at CSA and Defendant BOE including Defendants Walton, Koonce, Holloway and Mazo with authority to impose corrective measures failed to do so and concealed, failed to disclose and exhibited deliberate indifference toward Plaintiffs and toward circumstances that implicated Defendant Greene.

27.     Upon information and belief, Defendants BOE and CSA personnel failed to implement corrective measures despite having knowledge of a substantial likelihood that

7

Defendant Greene was abusing students.  Such CSA personnel included, but are not limited to Defendants Barbara Walton, the former principal at CSA and Defendant Andrew Koonce, Defendant Kendra Holloway, and Defendant Jeffrey Mazo, who served as assistant principals at CSA during relevant times.

28.     The various failings of Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo, as described herein,  proximately resulted in threats to student safety to continue unabated at CSA for approximately 15 years.

29.     At the time of filing, Plaintiffs John Does 1 through 8 are currently 25, 27, 21, 29, 28, 27,  27 and 27 years old, respectively.

30.     Only within the past two years have Plaintiffs John Does 1 through 8 had a reasonable basis for believing Defendant BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo knew of the risk Defendant Greene likely presented to CSA students before, during and after he assaulted and abused Plaintiffs.

31.     Only within the past two years have the Plaintiffs had a reasonable basis for believing that Defendant BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo intentionally concealed and/or showed deliberate indifference to the threat Greene posed to students at CSA.

32.     Only within the past two years have the Plaintiffs had reason to know that Defendant BOE and CSA faculty and administrators were in a position to take corrective measures and had actual knowledge of the sexually abusive environment that Plaintiffs endured regularly as students of Defendant Terence Greene at CSA.

33.     Only within the past two years did Plaintiffs have a reasonable basis for alleging or concluding that Defendants BOE or CSA and Defendants Walton, Koonce, Holloway and Mazo

harmed them separately and independently from the harm Defendant Greene inflicted on them. Defendant Greene harmed Plaintiffs by sexually assaulting and abusing them.  By contrast, Defendant BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo harmed Plaintiffs separately and independently from Defendant Greene by failing to protect them from Greene, despite knowing Greene was substantially likely to be a sexual predator.  Not until the past two years would Plaintiffs' due diligence have allowed them to reasonably infer what Defendants BOE and CSA knew about Greene and/or what Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo did or failed to do with that information.

## **Parties**

34.  Defendant Cleveland Metropolitan School District Board of Education is the entity located in Cleveland, Ohio that operates and maintains the public school system in the City of Cleveland, including but not limited to the Cleveland School of the Arts (CSA).  Defendant BOE receives and at all relevant times received, federal financial assistance.  Defendant is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq.*

35.  Plaintiffs John Does 1 through 8 were enrolled as students at CSA while Defendant Greene was employed by or worked for on behalf of CSA.

36.  Defendant Barbara Walton was the principal of CSA from approximately 1999 until 2013.

37.  Defendants Andrew Koonce, Jeffrey Mazo and Kendra Holloway were assistant principals at CSA at relevant times herein.

38.  Plaintiffs John Does 1 through 8 were all residents of Ohio at all times during the assaults and abuses described herein.

39.    Plaintiff John Doe 1 is currently a resident of New York.  Plaintiffs John Does 2 through 8 are currently residents of Cuyahoga County, Ohio.  Plaintiff John Doe 6 is currently a resident of Georgia and John Doe 7 resides in California.

40.    Plaintiff John Doe 1 attended the CSA upper campus from 2006 through 2010.

41.    Plaintiff John Doe 2 attended the CSA upper campus from 2007 to 2011.

42.    Plaintiff John Doe 3 attended the CSA upper campus from 2009 to 2012 and again for his senior year.

43.    Plaintiff John Doe 4 attended the CSA upper campus from 2003 until 2010.

44.    Plaintiff John Doe 5 attended the CSA upper campus from 2008 to 2010.

45.    Plaintiff John Doe 6 attended CSA upper campus from 2007 until 2011.

46.    Plaintiff John Doe 7 attended CSA upper campus from 2007 until 2011.

47.    Plaintiff John Doe 8 attended CSA upper campus from 2007 until 2010.

48.    Plaintiff John Doe 1 was repeatedly and sexually abused by Defendant Terence Greene beginning in 2009, when he was 14 years old, and ending at the end of 2010.

49.    Plaintiff John Doe 2 was repeatedly sexually abused by Defendant Greene beginning in September 2009, when he was 16 years old, and ending in 2011.

50.    Plaintiff John Doe 3 was sexually assaulted by Defendant Greene in 2012 when he was 13 or 14 years old.

51.    Plaintiff John Doe 4 was sexually assaulted by Defendant Terence Greene in 2008 when he was 16 or 17 years old.

52.    Plaintiff John Doe 5 was sexually assaulted by Defendant Terence Greene when he was 16 years old.

53.     Plaintiff John Doe 6 was sexually assaulted by Defendant Terence Greene in 2011 when he was 17 years old.

54.     Plaintiff John Doe 7 was sexually assaulted by Defendant Terence Greene in 2008 and 2009 when he was 15 and 16 years old.

55.     Plaintiff John Doe 8 was sexually assaulted by Defendant Terence Green in 2009 or 2010 when he was 16  or 17 years old.

56.     All sexual assaults and abuse described herein occurred while Defendant Terence Greene was a teacher or instructor at CSA and John Does 1 through 8 were students at CSA.

57.     At the time of the sexual assaults on Plaintiffs, Defendant Greene was approximately 42 – 46 years old.

58.     Plaintiff John Doe I was first sexually assaulted by Defendant Terence Greene following a rehearsal at the CSA upper campus.  Following the rehearsal, Defendant Greene offered to drive two students home "because it was late."  After Greene dropped off the other student, Defendant Greene drove Plaintiff John Doe 1 to his home in Euclid, Ohio.  At his home, he brought Plaintiff John Doe 1 into his bedroom, began undressing him, complimenting his appearance and then performed oral sex on him.  On the same occasion, Defendant Greene provided Plaintiff John Doe 1 with inhaled psychoactive drugs commonly known as "popper" for the purpose of "relaxing him" prior to Defendant Greene engaging in full penetration rape of Plaintiff John Doe 1.

59.     Subsequent to the facts set forth in the preceding paragraph, Plaintiff John Doe 1 was repeatedly sexually abused by Defendant Greene in various locations and manners including orally, anally and digitally.  These events occurred in excess of 10 times over the course of two years.  The other assaults occurred at the school, in Greene's car, and in Greene's home.

60.     Plaintiff John Doe 2 was first sexually assaulted by Defendant Greene in or about September, 2009, during the beginning of Plaintiff's ninth grade school year at CSA.

61.     On that first occasion, Defendant Greene asked Plaintiff John Doe 2 to come into the boys' dressing room with him "to size Plaintiff for a dance belt."  Greene asked John Doe 2 to undress and Defendant Greene then began to perform oral sex on him in the dressing room. Afterward, Greene told Plaintiff John Doe 2 not to tell anyone what just happened.  Subsequent to the first abuse, the following week Greene took Plaintiff John Doe 2 to Greene's house ostensibly to retrieve dance clothes.  While at his house, Defendant Greene performed oral sex on Plaintiff John Doe 2.

62.     Throughout the remainder of his ninth-grade year and into his tenth-grade year, Defendant Greene sexually assaulted and abused Plaintiff John Doe 2 in excess of twenty times. The subsequent assaults occurred in the school dressing room, at Greene's house, and in Greene's car.  The subsequent assaults included oral sex, digital penetration, and anal sex.

63.     Plaintiff John Doe 3 was sexually assaulted by Defendant Greene on one occasion while he was in the ninth grade.  At that time, following a late rehearsal for an upcoming performance, Plaintiff John Doe 3 was alone in the boys' dressing room after the other male dancers had left.  Defendant Greene entered the dressing room and commented to Plaintiff that he has "seen all the boys' penises."  Then Defendant Greene convinced John Doe 3 to let him drive him home.  When Defendant Greene and John Doe 3 were in Greene's vehicle on CSA property, Greene asked John Doe 3 to show him his penis while Greene started touching Plaintiff's pubic hair.  Defendant Greene commented to Plaintiff John Doe 3 that his pubic hair was soft.  John Doe 3 was scared and uncomfortable and asked Defendant Greene to drive him home and Greene did.

64.     Shortly after the events described above, Defendant Greene offered to pay several hundred dollars for a school related trip on behalf of Plaintiff John Doe 3 in an attempt to curry favor and prevent him from going to authorities about the assault.

65.     Plaintiff John Doe 4 was sexually assaulted by Defendant Greene on one occasion when he was a ninth-grade student at CSA.  After appointing John Doe 4 the privilege of serving as "rehearsal director," Defendant Greene drove John Doe 4 to his home ostensibly for the purpose of working on music for an upcoming show.  While Plaintiff was at Greene's house, Greene steered the conversation towards sexual orientation and took Plaintiff into his basement to show him a movie called "Noah's Ark:  Jumping the Broom", an R-rated movie about two African American men getting married.  The movie's R-rating is for "sexual content and language."  During the movie Defendant Greene sat uncomfortably close to Plaintiff and began rubbing his legs, upper thighs, and groin.  Plaintiff John Doe 4 became very uncomfortable and demanded Defendant Greene to stop.  Defendant then drove John Doe 4 to CSA and from there he walked home.

66.     Shortly after the events recited above, Defendant Greene sent John Doe 4 an apology card.

67.     Plaintiff John Doe 5 was raped by Defendant Terence Greene on one occasion.  At that time, Plaintiff John Doe 5 and another dance student met with Greene in the school after hours to work on choreography for an upcoming talent show.  Immediately, Greene took the other student into the boys' dressing room alone and remained in there for 10 to 15 minutes.  After that, Greene asked Plaintiff John Doe 5 to come into the dressing room.  Plaintiff John Doe 5 observed that it appeared that Greene and the other student had just engaged in oral sex.  After that, Greene drove Plaintiff John Doe 5 to an off-site rehearsal at a local church, but on the way stopped at Greene's

house.  While at Greene's house, Greene committed a full penetration rape of Plaintiff John Doe 5.

68.   Plaintiff John Doe 6 was sexually assaulted and raped by Defendant Terence Greene on one occasion in May, 2011.  Defendant Greene invited Plaintiff John Doe 6 over to his house in Cleveland to review photographs Plaintiff had taken of the CSA dancers.  While Plaintiff was at Defendant Greene's home, Defendant Greene played pornography and performed oral sex on Plaintiff before engaging in full penetration rape.  Plaintiff tried to resist Greene's assault but was unsuccessful.

69.   Plaintiff John Doe 7 was sexually assaulted by Defendant Terence Greene on one occasion in late 2008 or 2009.  Defendant Greene and Plaintiff John Doe 7 were the last people remaining in the CSA boy's dressing room following an after-school rehearsal for the CSA Men's Ensemble.  Since Plaintiff John Doe 7 was not a dance major, he was having difficulty getting comfortable in his dance belt.  Defendant Greene, under the guise of helping Plaintiff John Doe 7 with his dance belt, grabbed his penis.  Plaintiff John Doe 7 was not wearing anything below his waist at the time.  Plaintiff John Doe 7 forcibly pushed Defendant Greene's hands away, making it clear to Defendant Greene that his advances were unacceptable.  Shortly after that event, Plaintiff John Doe 7 quit CSA Men's Ensemble.

70.   Plaintiff John Doe 8 was sexually assaulted on one occasion during his 10th grade year in 2009 or 2010.  Defendant Terence Greene and John Doe 8 were alone in the dance studio at CSA.  While Defendant Terence Greene was helping John Doe 8 stretch before dancing, Defendant Greene slid his hand up Plaintiff John Doe 8's leg, above his dance tights and fondled his genitalia.

71.     Approximately one week after touching Plaintiff John Doe 8, Defendant Greene purchased gifts for him, including various articles of clothing.

72.     At no time during any of the attacks on any Plaintiffs did Defendant Terence Greene ever use a condom.

### Defendant Terence Greene

73.     Defendants BOE and CSA hired Greene as a "contract teacher" in or around 1999. He worked teaching dance to CSA students until 2014.  Defendant Greene's "GreeneWorks" website states that Greene served as "dance director" at CSA for 17 years.

74.     At all times mentioned herein, Terence Greene was not recognized under Ohio law as a credentialed teacher.

75.     Defendant Greene served as an "artist-in-residence" at CSA during his tenure there. The "artist-in-residence" program allowed CSA to employ non-credentialed teachers who were career artists to come and work as instructors in their specialized artistic discipline and teach their craft to CSA students.

76.     As part of his responsibilities as a dance instructor at CSA, Defendant Greene worked closely with male and female dance students in grades 6 through 12.  He produced dance performances and had contact with students during the school day, after school, in the evenings and weekends, and at rehearsals and performances.  In addition, when the CSA dance students would perform out of town, Greene would accompany the students and stay in hotels with them.

77.     Plaintiffs' ages varied between 13 and 17 years old when they were abused, however upon information and belief, Greene abused other non-parties that were younger.

78.     All Plaintiffs were enrolled as full-time students at CSA at all times while the sexual abuse occurred.

79.     Plaintiffs John Does 2 through 5 were gifted dance students for whom Defendant Terence Greene was not only a teacher, instructor and mentor, but also a person in the dance community who was highly recognized, highly respected and revered by Plaintiffs.  Greene was a long-time member of the local and national dance community who had significant power to control the direction and success of the dance careers of Plaintiffs John Does 2 through 5.

80.     Plaintiffs John Does 1, 6 and 7 were not a dance major at CSA.  Instead, Plaintiff John Does 1 and 6 worked in a support position with the dance department working on sets, costumes, photography, etc., and Plaintiff John Doe 8 took a choreography class and participated in CSA Men's Ensemble with Defendant Greene.  Plaintiff John Doe 8 majored in photography.

81.     Defendant Greene's practice of sexually abusing male CSA students was deliberate and premeditated.  His strategy was to manipulate himself into a position of trust in his victim's lives by profusely complimenting their abilities and entrusting his victims with special responsibilities such as "rehearsal director" and/or simply making excuses to spend time with his victims away from their parents.

82.     Oftentimes, Defendant Greene would prey upon his teenaged students who were emotionally vulnerable and/or experiencing trying or difficult times in their personal lives.

83.     Plaintiffs were raised to believe and did believe that their teachers and instructors were people of integrity whose job it was not only to teach but to protect their students from harm and to act in the student's best interests.

84.     In selecting victims to manipulate and abuse, Defendant Greene would often prey upon teenagers, including some Plaintiffs who Greene perceived as questioning or learning about their sexuality as they approached adulthood.

16

85. The relationship between a young dance student and his instructor is supposed to be built on mutual respect and trust. Greene maliciously violated the trust given to him not only by his students, but by his students' families.

86. Plaintiff John Does 1 through 8 were and are humiliated, embarrassed, betrayed and angry at having been sexually assaulted by Defendant Greene.

87. Plaintiffs John Does 1 through 8 feared being ridiculed and ostracized by their school and by the dance community if they complained about Defendant Greene's predatory and criminal behavior.

88. Plaintiffs John Does 1 through 8 feared that they would suffer negative consequences at school and in their careers if they revealed their secrets about Defendant Greene.

89. The sexual assault victim of Defendant Greene who came forward in 2003 described the CSA staff and students as "toxic" to him after he came forward. That student felt unwelcomed by his fellow students and by the faculty until he transferred from CSA shortly thereafter.

90. Defendant Terence Greene had a good professional reputation in the local and national arts community. His presence as an instructor brought perceived quality and respect to the CSA dance program. Equally important, having Defendant Terence Greene on its staff generated revenue and donations that benefited CSA through supporting organizations such as "Friends of CSA." Because of his stature in the community, the demands he made upon his dance students, his tyrannical teaching method, and the power he wielded over them and their careers, Defendant Greene was feared by Plaintiffs John Does 1 through 8.

91. The disparate power between Defendant Greene and Plaintiffs, plus the humiliation, embarrassment and fear, after being sexually abused all combined to prevent Plaintiffs

17

from coming forward right away to CSA administrators or other authorities or even their own families.

92.     The success of students who graduate from CSA is disproportionately higher than those who graduate from other Cleveland public high schools.  The CSA website boasts that 100% of its graduates "are accepted into higher education institutions."  CSA accepts only students that apply and meet a thorough academic and artistic screening process including essay writing, auditions, testing, portfolio review and an academic interview.  Admission to CSA is difficult and is considered a privilege among its students.  CSA is the crown jewel of the Cleveland public schools.  Plaintiffs John Does 1 through 8 also feared coming forward with their accounts of sexual assault could jeopardize their continuing admission to CSA or could result in some other form of retribution.

93.     In June, 2020, Plaintiff John Doe 4 posted his allegations against Defendant Greene on Facebook, and other members of the CSA Facebook community begin sharing their stories and learning of the widespread nature of Defendant Greene's egregious conduct at CSA.

94.     CSA has a tight-knit and close alumni community.  Many CSA graduates remain connected through Facebook as "Facebook Friends" including most Plaintiffs, Defendant Greene and other CSA faculty and administrators.

95.     Within days of John Doe 4 posting his allegations in June 2020 against Defendant Terence Greene and tagging Greene in the post, John Doe 1 and John Doe 2 posted similar stories alleging they had been sexually assaulted by Defendant Greene.

96.     Not until within the past two years and more specifically since June, 2020, have Plaintiffs had a reasonable basis for believing that Defendant BOE and CSA had knowledge that Defendant Greene was sexually abusing his CSA students.

97.     Not until within the past two years have Plaintiffs had a reasonable basis for believing that CSA concealed or remained deliberately indifferent to the substantial risk Defendant Greene caused to CSA students, including Plaintiffs John Does 1 through 8.

98.     Left to their own means, Plaintiffs had no reasonable way of knowing that CSA was aware or should have been aware that Greene was abusing students.  Plaintiffs also had no way to know who or when reports were made to CSA about Greene's predatory behavior or how CSA did nothing to stop it.  No exercise of due diligence would have revealed to them how CSA's acts and omissions caused Plaintiffs to suffer independent injuries separate and apart from the injuries caused directly from the sexual assaults.

## CSA: Knowledge and Deliberate Indifference

99.     Defendant Terence Greene was hired as a contract teacher at CSA in or around 1999.  In or around March of 2002, Defendant Terence Greene took a student downtown to watch a performance of the Alvin Ailey Dance Company at Playhouse Square.   Following the performance, Defendant Greene took the student to his home where Greene performed oral sex on him.  This was the beginning of repeated sexual assaults against the student that would last for several months.  At the time the assaults began, the student was 14 years old and Greene was approximately 36 years old.

100.    Subsequent to his abuse, the student reported the events to a representative from the Cleveland Aids Taskforce who subsequently advised the student's mother and the police.

101.    The abuse of this student resulted in Defendant Greene being indicted and charged by the Cleveland Police and county prosecutors with four counts of unlawful sexual conduct with a minor.

102.     Prior to trial, the student victim wrote out a statement for the police that included specific details of the assaults and of Defendant Terence Greene that could only be known if the victims' allegations were true. These details included a graphic description of the sex acts involving Greene, a detailed description of Greene's bed linens, the artwork in Greene's bedroom, and a physical description of Greene's penis and his tattoo.

103.     At trial, the CSA student testified to the allegations in his statement including how Defendant Greene repeatedly assaulted him including on a trip to Dayton, Ohio, when the student had to share a hotel room with Greene for several days and was raped repeatedly in that hotel room.

104.     The record or transcript from the 2004 criminal trial no longer exists.

105.     During the pendency of his criminal prosecution, Defendant Greene took a leave of absence from CSA. After a bench trial in the Cuyahoga County Common Pleas Court, Defendant Terence Greene was acquitted on all charges on July 1, 2004.

106.     When the 2004 - 2005 school year began at CSA in August of 2004, Defendant Greene was right back in the school, working with high school dance students.

107.     At Defendant Greene's trial, the only evidence of Greene's sexual abuse was the testimony of the teenaged student. During his trial, the administrators at CSA expressed support for Defendant Greene. No other students testified on behalf of the prosecution despite other dance students having been sexually assaulted by Greene. Other CSA students did testify on behalf of Greene's defense.

108.     The administrators of CSA and Defendants Walton, Koonce, Holloway and Mazo failed to conduct a Title IX investigation of the allegations made by the student. The administrators at CSA never even spoke with the victim about his allegations against Greene, nor did they speak with any other CSA dancers.

109.    All of the sexual abuse suffered by Plaintiffs John Does 1 through 8 occurred subsequent to Greene returning to the school after his acquittal on criminal charges in 2004.

110.    Upon information and belief at all relevant times, persons with authority to terminate Defendant Greene's access to students or to institute other corrective measures knew or should have known there was a substantial likelihood that Defendant Terence Greene had and was sexually abusing male students.

111.    Upon information and belief, Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo entirely failed to conduct any reasonable investigation into Defendant Greene's conduct at any time after his 2003 indictment until his resignation from CSA in or about 2014.

112.    Upon information and belief, Defendants BOE and CSA administration including Defendants Walton, Koonce, Holloway and Mazo had actual knowledge that Defendant Greene continued sharing hotel rooms with students on school-sponsored trips, even after there was direct testimony in Greene's 2004 trial that Greene repeatedly raped his victim in Dayton, Ohio in a hotel room on a school-sponsored trip.

113.    CSA never ordered Defendant Terence Greene to stop sharing hotel rooms with his students, and in fact, Defendant Greene continued to do so throughout his career at CSA, including with a student not named as a Plaintiff in the within lawsuit.

114.    CSA never required Defendant Greene to have a third person present when he was alone with any students.

115.    CSA did not diligently follow up on any of the rumors or reports of sexual abuse involving Defendant Terence Greene until he was asked to resign in 2014.

116.    At all relevant times, Defendants BOE and CSA failed to have in place any meaningful complaint or resolution process for allegations of student sexual harassment or abuse.

117.    In all the ways recited herein, Defendants BOE and CSA and Defendants Walton, Koonce, Holloway and Mazo failed Plaintiffs John Does 1 through 8 and other victims not involved in this lawsuit in every way imaginable.  Defendant BOE and CSA allowed a perverse culture of abuse to fester in its dance department unabated for over 15 years, despite rampant rumors and allegations of sexual abuse throughout the student and staff population.

## FEDERAL CAUSES OF ACTION

## CLAIMS FOR RELIEF

### Count I – Violation of Title IX, 20 U.S.C. §1681(a) *et seq.* – Heightened Risk

118.    Plaintiffs incorporate and reaver all of the allegations contained in Paragraphs 1 through 117 as if the same were fully rewritten herein.

119.    Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a), (hereinafter Title IX), states:

> No person in the United States, shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance . . . .

120.    Title IX is implemented through the Code of Federal Regulations.  *See* 34 C.F.R. Part 106, 34 C.F.R. §106.8(b) provides:

> . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

121.    As explained in Title IX, guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

122.    Sexual harassment is unwelcomed conduct of a sexual nature, including unwelcomed sexual advances, requests for sexual favors and other verbal, non-verbal or physical conduct of a sexual nature.

123.    Title IX covers all programs of a school that receives any federal financial assistance and covers sexual harassment -- including sexual assault -- by school employees, students and third parties.

124.    At all relevant times, Defendants BOE and CSA received federal financial assistance and is therefore subject to Title IX.

125.    Title IX requires Defendants BOE and CSA to promptly investigate all allegations of sexual harassment, including sexual assaults and abuse.

126.    Defendant Greene's sexual abuse, sexual assault, molestation and harassment of Plaintiffs which included oral sex, anal sex, digital penetration and sexual touching of the genitals and inappropriate sexual comments was sex discrimination under Title IX.

127.    Defendants BOE and CSA were required to promptly investigate and appropriately address any and all allegations or complaints against Defendant Greene.

128.    CSA had actual knowledge of at least one sexual assault of a minor male student prior to any of the events involving Plaintiffs John Does 1 through 8.

129.    Defendants BOE and CSA had personnel with authority to take corrective action but failed to do so including, but not limited to the school principal and vice principals, and other administrators and staff.

130.    Given the length of time that Defendant Greene's abuse continued and the number of victims of his abuse (many of which are not named in this lawsuit), and the indictment of Greene in 2003, it is implausible for CSA to claim it was not aware of Defendant Greene's abuse.

131.    Defendants BOE and CSA's failure to respond promptly and adequately to allegations of Defendant Greene's abuse constitutes sex discrimination and violation of Title IX.

132.    Upon information and belief, two CSA students reported to CSA administration that they had been sexually assaulted by Terence Greene.  In response to the allegations, Terence Greene was not terminated, nor was any report made to law enforcement, pursuant to ORC §2151.421.  Instead, Terence Greene was permitted to tender his resignation to CSA on September 10, 2014 for "personal reasons."

133.    By its acts and omissions, Defendants BOE and CSA acted with deliberate indifference to the rampant sexual abuse and harassment that Plaintiffs John Does 1 through 8 and other male CSA students were experiencing.  CSA's deliberate indifference included, but was not limited to:

- Failing to respond to allegations of sexual assault and harassment against Greene.

- Failing to promptly and adequately investigate allegations of Defendant Greene's sexual assaults and harassment.

- Allowing Greene to continue to have access to male students inside the school, on school property and off school property during school sponsored or school related activities.

- Allowing and permitting Defendant Greene access to male students in the boys' dressing room while students were changing clothes.

- Failing to discharge or supervise Defendant Greene after learning at least one student made a credible report of rape against Greene.

- Failing to require a chaperone with Greene at all times and especially when Greene had one to one contact with a student both within school

24

property and off school property during school-related events including out of town, overnight trips.

- Failing to have in place an effective sexual harassment policy that would allow and invite students to lodge complaints of assault or harassment and a program to separate the victim from the offender immediately.

- Allowing Greene to drive students, alone in his private vehicle to and from school-related events such as performances and rehearsals.

- Allowing Greene to stay in hotels with students after allegations that he repeatedly raped a student in a hotel room while on a school-related trip.

134.    Defendants BOE and CSA's failure to promptly and properly investigate, remedy and adequately respond to complaints, allegations, reports and rumors of Defendant Greene's sexual misconduct caused Plaintiffs (and other CSA victims) to suffer additional and continued sexual attacks and harassment and made them vulnerable to it.

135.    Defendants BOE and CSA's failure to promptly and properly investigate, remedy and adequately respond to complaints, allegations, reports and rumors of Defendant Greene's sexual misconduct created a sexually hostile environment and denied Plaintiffs access to educational opportunities and benefits at CSA.

136.    As a direct and proximate result of Defendants BOE and CSA's violation of Plaintiffs' rights under Title IX, Plaintiffs have suffered and continue to suffer emotional distress, physical manifestations of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life; loss of professional opportunities; were prevented and continue to be prevented from obtaining full enjoyment of life; have sustained and continue to sustain loss of earnings and earning capacity; and have incurred various personal expenses.

## Count II – Violation of Title IX, 20 U.S.C. §1681(a) *et seq.* – Hostile Environment

137.    Plaintiffs incorporate and reaver all of the allegations contained in Paragraphs 1 through 136 as if the same were fully rewritten herein.

138.    The CSA building housed students ranging from 6th to 12th grade.

139.    The CSA students who attended the upper campus were entitled to use the building and related facilities free from sexual harassment and abuse. However, the persistent and repeated sexual harassment from Defendant Terence Green, the CSA dance director, created a hostile environment.

140.    The hostile environment at CSA that Plaintiffs John Does 1 through 7 were subjected to was so severe, egregious and objectively offensive that it served to prevent Plaintiffs from experiencing numerous educational and artistic opportunities and benefits including but not limited to safe and unfettered access to the boys' dressing room, full use and enjoyment of the dance studio, and other rehearsal and performance venues.

141.    The crushing pressure and stress of Plaintiffs being pursued and preyed upon in their school and being taught at the same time by their sexual assaulter resulted in Plaintiffs John Does 1 through 8 being unable to feel safe in their school and they were further subjected to an environment not conducive to education or training in any form.

142.    The sexually hostile environment inside CSA when Plaintiffs John Does 1 through 8 attended constituted sex discrimination and violation of Title IX.

143.    Prior to and while Plaintiffs were enrolled at CSA, Defendants BOE and CSA administrators in a position to implement corrective measures had knowledge that students were being subjected to a sexually hostile and abusive environment inside CSA and specifically within the dance department.

26

144.     Defendants BOE and CSA owed Plaintiffs John Does 1 through 8 a duty to investigate and remedy the conditions that made CSA a sexually hostile and abusive environment.

145.     Defendants BOE and CSA officials showed deliberate indifference towards the safety of CSA students including Plaintiffs John Does 1 through 8 who attended the CSA building on a daily basis while enrolled as high school students.

146.     Defendants BOE and CSA violated Title IX by failing to timely remedy the sexually hostile and abusive environment in its school.

147.     As a direct and proximate result of Defendants BOE and CSA's violation of the rights of Plaintiffs John Does 1 through 8 under Title IX, Plaintiffs have suffered and continue to suffer damages as previously alleged in this Complaint.

WHEREFORE, Plaintiffs John Does 1 through 8 respectfully request for their Title IX Causes of Action, that this Court:

a.   Enter judgment in favor of Plaintiffs on their claims for discrimination under Count I, Title IX against Defendant BOE;

b.   Enter judgment in favor of Plaintiffs on their claims for discrimination under Count II, Title IX against Defendant BOE;

c.   Declare that Defendant BOE's conduct was in violation of Title IX of the Education Amendment of 1972;

d.   Award Plaintiffs compensatory damages in amounts to be established at trial, including, without limitation, payment of Plaintiffs' medical and other expenses incurred as a consequence of the sexual abuse and/or harassment and the Cleveland School of the Arts deliberate indifference;

e.   Damages for depravation of equal access to the educational opportunities and benefits provided by the Cleveland School of the Arts;

f.   Damages for past, present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life and loss of future earnings and earning capacity;

g.   Award Plaintiffs prejudgment and post-judgment interests;

h.   Award Plaintiffs their court costs and expenses including attorneys' fees pursuant to 42 U.S.C. §1988(b); and

i.   Grant such other relief as this Court deems just and proper.

### STATE CAUSES OF ACTION

### Count III – Negligent, Wanton and Reckless Conduct

148.   Plaintiffs incorporate and reaver all of the allegations contained in Paragraphs  1 through 147 as if the same were fully rewritten herein.

149.   At all times mentioned herein, Defendant Barbara Walton was the principal of the Cleveland School of the Arts, having served from approximately 1999 to 2013.

150.   At all times mentioned herein, Defendant Kendra Holloway was an assistant principal at the Cleveland School of the Arts.

151.   At all times mentioned herein, Defendant Andrew Koonce was an assistant principal at the Cleveland School of the Arts.

152.   At all times mentioned herein, Defendant Jeffrey Mazo was an assistant principal at the Cleveland School of the Arts.

153.   As administrators at CSA, it was the responsibility and duty of Defendants Walton, Holloway, Koonce, and Mazo to ensure the safety of all CSA students, including, but not limited to Plaintiffs John Does 1 through 8.

154.   Prior to the sexual assaults by Defendant Terence Greene on Plaintiffs, Defendants Walton, Holloway, Koonce and Mazo had actual and constructive knowledge of other sexual allegations against Defendant Greene involving other CSA students.

155.    Defendants Walton, Holloway, Koonce and Mazo negligently, wantonly and recklessly failed to take appropriate actions required by law and specifically by Ohio Revised Code §2151.421 to report Defendant Greene's conduct to law enforcement.

156.    Defendants Walton, Holloway, Koonce and Mazo negligently, wantonly and recklessly failed to conduct an investigation and failed to take any remedial actions whatsoever to prevent injury to CSA students including Plaintiffs John Does 1 through 8.

157.    Defendants Walton, Holloway, Koonce and Mazo negligently, wantonly and recklessly ignored the evidence of Greene's predatory behavior because of the fear that if the behavior became known publicly, it would damage the reputation of CSA and would negatively affect the revenue and donations that help support the school.

158.    Defendants Walton, Holloway, Koonce and Mazo negligently, wantonly and recklessly failed to remove Defendant Greene from CSA premises and restrict his access to any CSA students.

159.    As a direct and proximate result of the negligent, wanton and reckless conduct of individual Defendants Walton, Holloway, Koonce and Mazo, Plaintiffs John Does 1 through 8 sustained injuries and damages as previously alleged in this Complaint.

WHEREFORE, for Cause of Action No. III, Plaintiffs pray for judgment against Defendants Walton, Holloway, Koonce and Mazo in an amount that will fully and fairly compensate Plaintiffs for the injuries and damages as alleged herein.  Additionally, Plaintiffs pray for punitive damages so as to punish or make an example of Defendants in a sum to be determined by a jury.

## Count IV – Sexual Assault & Battery

160.   Plaintiffs incorporate and reaver all of the allegations contained in Paragraphs 1 through 159 as if the same were fully rewritten herein.

161.   At all times mentioned herein, Defendant Terence Greene was a dance instructor and dance director at the Cleveland School of the Arts.

162.   At all times mentioned herein, Plaintiffs John Does 1 through 8 were students at CSA at the same time Defendant Greene was at CSA.

163.   While enrolled as students, Defendant Terence Greene groomed, manipulated and coerced Plaintiffs John Does 1 through 7 to engage in various sexual acts with him as previously detailed herein.

164.   When the sexual abuse started, Plaintiff John Doe 1 was 14 years old, Plaintiff John Doe 2 was 16 years old, Plaintiff John Doe 3 was 13 or 14 years old, John Doe 4 was 16 or 17 years old, John Doe 5 was 16 years old, John Doe 6 was 17 years old, and John Doe 8 was 15 or 16 years old.  Plaintiff John Doe 8 was 16 or 17 years old.

165.   The conduct of Defendant Terence Greene constituted sexual assault and battery against Plaintiffs John Does 1 through 8.

166.   As a direct and proximate result of Defendant Terence Greene's sexual assaults, Plaintiffs John Does 1 through 8 sustained injuries and damages as previously alleged in this Complaint.

## Count V – Intentional Infliction of Emotional Distress

167.   Plaintiffs incorporate and reaver all of the allegations contained in Paragraphs 1 through 166 as if the same were fully rewritten herein.

168.    Defendant Terence Greene knew that the repeated sexual assaults against Plaintiffs John Does 1 through 8 were likely to cause severe emotional distress to each Plaintiff.

169.    The aforesaid conduct of Defendants Greene, and the ratification and indifference of Greene's behavior by Defendants Walton, Holloway, Koonce and Mazo was illegal, outrageous, egregious and well beyond the bounds of decency and entirely intolerable in a civilized society.

170.    As a direct and proximate result of Defendants Greene's sexual assaults, and the ratification and indifference of Greene's behavior by Defendants Walton, Holloway, Koonce and Mazo, Plaintiffs John Does 1 through 8 suffered severe emotional distress, resulting in injuries and damages as previously alleged.

### Count VI – Hiring, Supervision and Retention

171.    Plaintiffs incorporate and reaver all of the allegations contained in Paragraphs 1 through 170 as if the same were fully rewritten herein.

172.    There was an employment relationship between Defendant BOE and Defendant Terence Greene.

173.    Defendant Terence Greene was not a credentialed teacher nor was he competent to be involved with children.

174.    Defendants BOE, CSA, Walton, Holloway, Koonce and Mazo had actual and constructive knowledge that Defendant Greene was incompetent to teach or be around children for the myriad of reasons described in this Amended Complaint.

175.    Defendant Greene's acts and the acts of the remaining Defendants caused Plaintiffs' injuries and damages as described herein.

176.    Defendants' negligent, wanton and reckless actions in hiring, supervising, and retaining Defendant Greene at CSA were the proximate cause of Plaintiffs' permanent injuries.

WHEREFORE, for Causes of Action Nos. III, IV, V and VI, Plaintiffs pray for judgment for compensatory damages against Defendants in an amount that will fully and fairly compensate Plaintiffs for the injuries and damages as alleged herein.  Additionally, because of the wanton, reckless and intentional behavior described herein, Plaintiffs pray for punitive damages for any cause of action where punitive damages are appropriate so as to punish and make an example of all Defendants in a sum to be determined by a jury.

### JURY DEMAND

A trial by jury is hereby requested in the maximum number allowed by law at the time of trial of the within action.

Respectfully submitted,

*/s/ Ryan H. Fisher*

**RYAN H. FISHER (#0043799)**
**MEGHAN P. CONNOLLY (#0089682)**
**KYLE B. MELLING (#0091208)**
Lowe Eklund Wakefield Co., LPA
1660 West Second Street
610 Skylight Office Tower
Cleveland, OH 44113-1454
(216) 781-2600 (Telephone)
(216) 781-2610 (Facsimile)
rfisher@lewlaw.com
mconnolly@lewlaw.com
kmelling@lewlaw.com
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

A copy of the foregoing has been filed electronically this 17th day of November, 2020. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Ryan H. Fisher*

**RYAN H. FISHER, ESQ. (#0043799)**