## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE 1, *et al.*, | ) | Case No. 1:20-cv-01695 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | William H. Baughman, Jr. |
| THE CLEVELAND | ) | |
| METROPOLITAN SCHOOL | ) | |
| DISTRICT BOARD OF | ) | |
| EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### OPINION AND ORDER

Plaintiffs John Does 1 through 8, former students at Cleveland School of the Arts, filed suit alleging sexual assault and abuse spanning more than a decade by a popular teacher and choreographer.  As defendants, they named Terrence Greene, the former teacher; the Cleveland Metropolitan School District Board of Education; and four individuals who served as principal or assistant principals of the school at the relevant times.  Plaintiffs bring claims under Title IX of the Education Amendments Act of 1972 (Counts I and II), as well as claims under State law for negligence (Count III), sexual assault and battery (against Mr. Greene only) (Count IV), intentional infliction of emotional distress (Count V), and negligent hiring, supervision, and retention (Count VI).

Mr. Greene has not appeared, and Plaintiffs seek a default judgment against him.  The remaining Defendants move to dismiss Counts I through III and Counts V

and VI.  Because more than two years have passed since the youngest Plaintiff turned 18 years old, Plaintiffs' federal claims turn on the statute of limitations—whether Ohio's two-year general tort statute applies or whether the applicable limitations period is actually twelve years.  Beyond that, Defendants advance various immunity defenses and challenge the sufficiency of the pleadings for negligent, wanton, and reckless conduct (Count III), intentional infliction of emotional distress (Count V), and negligent hiring, supervision, and retention (Count VI.)  For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## STATEMENT OF FACTS

Taking the facts alleged in the second amended complaint as true and construing them in Plaintiffs' favor, as the Court must on a motion to dismiss, Plaintiffs base their claims on the following facts.

### A.  Background on the Parties

Plaintiffs are former students at Cleveland School of the Arts, a high school within the Cleveland Metropolitan School District.  (ECF No. 22, ¶ 3, PageID #242.) Defendant Barbara Walton served as the school's principal from 1999 to 2013.  (ECF No. 22, ¶ 149, PageID #267.)  Defendants Kendra Holloway, Andrew Koonce, and Jeffrey Mazo were assistant principals.  (*Id*.)

In or around 1999, the District hired Defendant Terrence Greene as an independent contractor to teach dance.  (*Id*., ¶ 73, PageID #254.)  Mr. Greene was not a teacher, per se, because he lacked the appropriate credentials; instead, the District

employed him in the school's artist-in-residence program, which allowed non-credentialed teachers to work in various specialized artistic disciplines.  (*Id*., ¶ 75.)

As part of his responsibilities as a dance instructor, Mr. Greene worked with both male and female students in grades six through twelve.  (*Id*., ¶ 76.)  He had contact with students during the day, after school, and in the evenings and on weekends.  (*Id*.)  When students performed out of town, Mr. Greene accompanied them and stayed in hotels with them.  (*Id*.)

### B.    Criminal Charges Against Mr. Greene

Plaintiffs allege that, in or around March 2002, Mr. Greene took a student to his home after watching a performance of the Alvin Ailey Dance Company at Playhouse Square and performed oral sex on the student.  (*Id*., ¶ 99, PageID #258.)  Afterward, the student reported the incident to a representative from the Cleveland Aids Taskforce, who notified the student's mother and the police.  (*Id*., ¶ 100.)  As a result of this report, Mr. Greene was indicted on four counts of unlawful sexual conduct with a minor.  (*Id*., ¶ 101.)  It does not appear that this student is one of the Plaintiffs in this litigation.

While the criminal charges remained pending, Mr. Greene took a leave of absence from Cleveland School of the Arts.  (*Id*., ¶ 105, PageID #259.)  After a bench trial in the Cuyahoga County Court of Common Pleas, Mr. Greene was acquitted on all charges on July 1, 2004.  (*Id*.)  Plaintiffs allege that school administrators generally and those named as Defendants in particular failed to conduct a Title IX investigation into the allegations and failed to speak with the alleged victim of the 2002 incident or any other students.  (*Id*., ¶ 108.)

### C.    Alleged Sexual Harassment and Abuse

Plaintiffs allege that Mr. Greene's allegedly predatory and abusive conduct continued unabated for approximately fifteen years.  (*Id.*, ¶ 28, PageID #247.) Plaintiffs allege that Mr. Greene sexually assaulted John Does 1 through 8 repeatedly when they were students at Cleveland School of the Arts and after Mr. Greene's return to the school following his acquittal.  (*Id.*, ¶ 109, PageID #260.)  Further, Plaintiffs allege that Mr. Greene's behavior was deliberate and premeditated in that he leveraged the mentor-mentee relationships he developed with students to "manipulate himself into a position of trust in his victim's lives." (*Id.*, ¶ 81, PageID #255.)

According to the second amended complaint, the victim who came forward in or around 2002, giving rise to the criminal charges against Mr. Greene, described staff and students at Cleveland School of the Arts as toxic.  (*Id.*, ¶ 89, PageID #256.) Following his report, he felt "unwelcome by his fellow students and by the faculty until he transferred from CSA shortly thereafter." (*Id.*, ¶ 89, PageID #256.)

Finally, Plaintiffs maintain they did not come forward with their respective allegations of abuse against Mr. Greene because of humiliation, embarrassment, and fear.  (*Id.*, ¶ 91, PageID #256–57.)  In June 2020, Plaintiff John Doe 4 posted his allegations against Mr. Greene on Facebook, and other members of the Cleveland School of the Arts Facebook community began sharing their stories of alleged abuse at Mr. Greene's hands.  (*Id.*, ¶ 94, PageID #257.)  Plaintiffs claim they had no reasonable basis for believing that the school knew or concealed Mr. Greene's alleged

abuse of students until they began discussing the alleged abuse on Facebook approximately two years before filing this lawsuit.  (*Id.*, ¶ 97, PageID #257–58.)

## STATEMENT OF THE CASE

Based on these alleged facts, Plaintiffs assert the following six claims against Defendants:

Count I asserts a claim for violation of Title IX, 20 U.S.C. § 1681(a) *et seq.* based on heightened risk.  (*Id.*, ¶¶ 118–36, PageID #261–64.)

Count II alleges a hostile environment in violation of Title IX.  (*Id.*, ¶¶ 137–47, PageID #265–67.)

Count III claims negligent, wanton, and reckless conduct against Ms. Walton, Mr. Koonce, Ms. Holloway, and Mr. Mazo in their individual capacities under Ohio law.  (*Id.*, ¶¶ 148–59, PageID #267–68.)

Count IV asserts a claim for sexual assault and battery against Mr. Greene.  (*Id.*, ¶¶ 160–66, PageID #269.)

Count V brings a claim against the individual Defendants for intentional infliction of emotional distress under Ohio law.  (*Id.*, ¶¶ 167–70, PageID #269–70.)

Count VI brings a claim for negligent, wanton, or reckless hiring, supervision, and retention of Mr. Greene.  (*Id.*, ¶¶ 171–76, PageID #270–71.)

Plaintiffs seek compensatory and punitive damages on their State-law claims.  (*Id.*, PageID #271.)  On their claims under Title IX, Plaintiffs seek declaratory relief and compensatory damages.  (*Id.*, PageID #266–67.)

As noted, Mr. Greene has failed to appear, and Plaintiffs seek a default judgment against him.  (ECF No. 25.)

## ANALYSIS

At the motion to dismiss stage, a complaint must "state a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). Therefore, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court must construe factual allegations in the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

6

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.  Accordingly, in reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be.  *See Iqbal*, 556 U.S. at 628 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (alteration and quotation omitted).  Against the backdrop of this familiar standard, the Court turns to analysis of Defendants' motion to dismiss the second amended complaint.

## I.      Title IX (Counts I and II)

Title IX of the Education Amendments Act of 1972 (Counts I and II) provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving federal financial assistance."  20 U.S.C. § 1681(a).  Defendants move for dismissal of Plaintiffs' Title IX claims under Rule 12(b)(6) on the ground that Plaintiffs' claims are time-barred.  Defendants bear the burden of demonstrating that the statute of limitations bars Plaintiffs' claims.  *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).

### I.A.    Applicable Limitations Period

Title IX itself does not provide a statute of limitations.  In such circumstances, federal courts borrow the applicable limitations period from the most analogous one available under State law.  *Cf. Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996) (looking to State law for statute of limitations under Section 1983); *Fudge v. Watson*,

7

No. 4:12CV2428, 2013 WL 496017, at *4 (N.D. Ohio Feb. 7, 2013) (citations and quotations omitted). Although the parties dispute the applicable limitations period, they agree that under Ohio law that period—whatever it is—does not begin to run until a minor turns eighteen. *Brooks v. Skinner*, 139 F. Supp. 3d 869, 881 (S.D. Ohio 2015); Ohio Rev. Code §§ 2305.16 & 3109.01.

Ohio law provides a twelve-year limitations period for claims of child sexual assault. In relevant part, that statute provides:

> An action for assault or battery brought by a victim of childhood sexual abuse based on childhood sexual abuse, or an action brought by a victim of childhood sexual abuse asserting any claim resulting from childhood sexual abuse, shall be brought within twelve years after the cause of action accrues. For purposes of this section, a cause of action for assault or battery based on childhood sexual abuse, or a cause of action for a claim resulting from childhood sexual abuse, accrues upon the date on which the victim reaches the age of majority.

Ohio Rev. Code § 2305.111(C). For three reasons, the Court concludes that this statute provides the applicable limitations period for Plaintiffs' Title IX claims. First, the language of the statute sweeps broadly, applying to "any claim resulting from childhood sexual abuse." *Id.* Second, the plain language of Section 2305.111 includes Plaintiffs' claims within its ambit. For example, the statute defines as childhood sexual abuse any specified criminal conduct involving a minor. *Id.* § 2305.111(A)(1). Second, it specifically applies to sexual contact with a minor where the offender is a teacher or school administrator. *Id.* § 2305.111(A)(1)(b)(iii). Third, Ohio law directs that the twelve-year limitations period in Section 2305.111(C) applies to "*any* claim resulting from childhood sexual abuse, as defined in section 2305.111 of the Revised

Code, . . . as provided in division (C) of that section."  *Id.* § 2305.10(E) (emphasis added).

Here, the gravamen of Plaintiffs' claims arises from claimed sexual assault and abuse, even though pled under Title IX.  When they filed suit, Plaintiffs ranged in age from 21 to 29.  (ECF No. 22, ¶ 29, PageID #247.)  Therefore, even the oldest of the Plaintiffs timely asserted claims under Ohio's twelve-year statute of limitations.

**I.B.    Other Judicial Determinations of the Proper Limitations Period**

Defendants argue Plaintiffs' claims are subject to Ohio's general two-year statute of limitations for personal injury claims under Section 2305.10.  (ECF No. 23-1, PageID #280.)  For this argument, Defendants rely on authority from other courts in this District concluding that the two-year statute of limitations applies to claims under Title IX, not Ohio's twelve-year limitations period.

**I.B.1. Federal Authority**

Most recently, the court in *Spragling v. Akron Public Sch*ools, No 5:18CV1969, 2019 WL 1255215, at *5 (N.D. Ohio Mar. 19, 2019), held that Sixth Circuit authority bound it to apply Ohio's two-year statute of limitations under Title IX.  In doing so, the *Spragling* Court adhered to its prior decision in *Fudge*, 2013 WL 496017, at *3, reaching the same conclusion, and also relied on a decision from the Supreme Court.

**I.B.1.a. Sixth Circuit**

The Sixth Circuit authority on which *Spragling* and *Fudge* relied came in *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 729 (6th Cir. 1996).  There, the Sixth Circuit held that Tennessee's one-year statute of limitations applied under Title IX, not the 180-day statute of limitations under the Title VI regulations.  In

reasoning that the shorter period for initiation of administrative proceedings did not apply, the court concluded that "the most analogous state limitations period was, as in section 1983 and section 1985 claims, the period applicable to personal injury claims." *Id.* (quoting *Bougher v. University of Pittsburgh*, 882 F.2d 74, 77 (3d Cir. 1989)).

Therefore, *Lillard* did not hold that the personal-injury limitations period applies instead of a more analogous statute of limitations. As between the deadline to commence administrative proceedings and Tennessee's more analogous personal injury statute, the latter applied. That holding is far different than a conclusion that the personal-injury limitations period *always* applies, even if a more analogous State statute is available.

### I.B.1.b. Supreme Court

*Spragling* also relied on a ruling from the Supreme Court holding that "a State's personal injury statute of limitations should be applied to all § 1983 claims." *Owens v. Okure*, 488 U.S. 235, 240–41 (1989). There, the Supreme Court explained that federal courts should borrow the most analogous statute of limitation available under State law in Section 1983 cases:

> Recognizing the problems inherent in the case-by-case approach, we determined that 42 U.S.C. § 1988 requires courts to borrow and apply to all §1983 claims the one most analogous state statute of limitations. We concluded, based upon the legislative history of § 1983 and the wide array of claims now embraced by that provision, that § 1983 confers a general remedy for injuries to personal rights. Because § 1983 claims are best characterized as personal injury actions, we held that a State's personal injury statute of limitations should be applied to all § 1983 claims.

10

*Id.* (cleaned up).  In *Spragling* and *Fudge*, the court seized on the last sentence of this discussion to conclude that federal law directs the use of a State's statute of limitations for a personal injury action.  But that reading ignores the context of the discussion, which referenced *Wilson v. Garcia*, 471 U.S. 261, 278–80 (1985), where the Supreme Court resolved disagreement over the proper statute of limitations for actions under Section 1983 in the face of congressional silence on the question.

In doing so in *Wilson*, the Supreme Court rejected use of a State's general residual statute of limitations in favor of using the period for personal injury actions. *Id.*  In that case, as in *Owens*, the Supreme Court merely applied the general principle that the most analogous State statute of limitation applies.  Therefore, the Supreme Court's cases on which *Spragling* and *Fudge* rely, like the Sixth Circuit in *Lillard*, did not hold that a State's statute of limitations for a personal injury action applies to the exclusion of a more analogous cause of action.  Here, Section 2305.111(C) of the Ohio Revised Code provides the most analogous limitations period.

### I.B.2. Ohio Supreme Court

Although federal law governs the question of which statute of limitations applies to Title IX, the Ohio Supreme Court's opinion on the scope of Section 2305.111(C) provides persuasive authority that confirms the Court's determination here.  In *Watkins v. Department of Youth Services*, 143 Ohio St.3d 477, 2015-Ohio-1776, 39 N.E.3d 1207, ¶ 1, the Ohio Supreme Court determined that Section 2305.111(C) governs the limitations period for all claims of childhood sexual abuse by a public employee.

Recognizing that Section 2305.111(C) applies to any claim for childhood sexual abuse filed on or after August 3, 2006, the effective date of the legislative amendment to the statute, the Ohio Supreme Court determined that the statute means what it says: "We read that sentence as starkly as it is written, i.e., that *any* claim resulting from childhood sexual abuse as statutorily defined—without exception and without regard to whether the tortfeasor was a private or state actor—must be brought as provided in R.C. 2305.111(C)." 2015-Ohio-1776, ¶ 15. Additionally, the Ohio Supreme Court looked to an uncodified section of the statutory amendment to confirm its plain reading of the text. *Id.* ¶ 16. Based on the breadth of the Ohio Supreme Court's ruling, the *Spragling* Court correctly noted that "there is little doubt that virtually all state law claims would fall under the expanded statute of limitations offered by O.R.C. 2305.111(C)." 2019 WL 1255215, at *3.

Defendants argue that the 2006 amendment lengthening the statute of limitations in Section 2305.111(C) to twelve years left the applicable limitations period for Title IX claims untouched in the wake of the Sixth Circuit's ruling in *Lillard*. More accurately, the General Assembly, Defendants say, knew that federal courts applied the general two-year tort limitations period and did not abrogate *Lillard*. This argument misunderstands how federal law presently determines limitations periods under Title IX. A state legislature does not determine when a plaintiff must file suit under Title IX. Federal law does. Because Congress has remained silent on the issue, federal courts look to the limitations period for the most

12

analogous State law cause of action—the twelve-year period of Section 2305.111(C) in this case.

## II.     Immunity of the School District (Count VI)

Of Plaintiffs' State law claims, only Count VI is brought against the School District. In that count, Plaintiffs allege negligent hiring, supervision, and retention. Under Ohio law, a political subdivision is generally "not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of . . . an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). The statute includes a school district within the definition of a political subdivision. *Id.* § 2744.01(F). And providing public education constitutes a governmental function. *Id.* § 2744.01(C)(2)(c).

Because the School District falls within this statutory provision, Plaintiffs' claim must fall within one of the statutory exceptions to immunity to proceed. For a political subdivision, the statute provides five exceptions to immunity covering: (1) operation of a motor vehicle; (2) a proprietary function; (3) public roads; (4) building defects; and (5) civil liability expressly imposed by statute. *Id.* § 2744.02(B). Only the fifth of these may apply, but Plaintiffs make no argument it does. "By failing to respond to defendant's arguments, plaintiff has waived his opposition to dismissal of the claim." *Durham v. Niffenegger*, No. 1:18-cv-0091, 2019 U.S. Dist. LEXIS 35034, at *23–24 (S.D. Ohio Mar. 5, 2019) (citations omitted).

### III.  Immunity of the Individual Defendants (Counts III, V, and VI)

In Count III, Plaintiffs bring a claim of "negligent, wanton and reckless conduct" under Ohio law against Ms. Walton, Mr. Koonce, Ms. Holloway, and Mr. Mazo in their individual capacities.  (ECF No. 22, PageID #267.)  As Defendants point out, Ohio law does not recognize a separate cause of action for wanton or reckless conduct, which is instead a level of intent that negates certain defenses to a claim for negligence.  *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 643 (N.D. Ohio 2014) (quoting *Cincinnati Ins. Co. v. Oancea*, No. L-04-1050, 2004 Ohio App. LEXIS 3891, at *7–8 (Ohio Ct. App. Aug. 13, 2004)).  Therefore, the Court treats Plaintiffs' claim in Count III as a claim for ordinary negligence.  Also, Counts V and VI assert claims against Ms. Walton, Mr. Koonce, Ms. Holloway, and Mr. Mazo in their individual capacities for intentional infliction of emotional distress and negligent hiring, supervision, and retention.  (ECF No. 22, ¶¶ 169 & 174, PageID #270 & 271.)

Relying on Section 2744.03(A)(6) of the Ohio Revised Code, the individual Defendants argue they have immunity from liability.  That statute provides that "[i]n a civil action brought against . . . an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function," an employee of a political subdivision "is immune from liability" unless one of the enumerated exceptions applies.  Ohio Rev. Code § 2744.03(A)(6).

14

### III.A.  Exception to Statutory Immunity for Acts or Omissions That Are Malicious, in Bad Faith, Wanton, or Reckless

Only one of those exceptions bears on Plaintiffs' allegations.  It extends to an employee's acts or omissions "with malicious purpose, in bad faith, or in a wanton or reckless manner."  *Id.* § 2744.03(A)(6)(b).  Under Ohio law, "wanton" conduct means "an entire absence of all care for the safety of others and an indifference to consequences" and "a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor."  *Anderson v. City of Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 26 (quoting *Tighe v. Diamond*, 149 Ohio St. 520, 526, 80 N.E.2d. 122 (1948)).  "Reckless conduct" means a "conscious disregard of or indifference to a known or obvious risk of harm to another than is unreasonable under the circumstances and is substantially greater than negligent conduct."  *Id.* at ¶ 32.

Defendants maintain that Plaintiffs' allegations fall far short of the demanding standard under Ohio law for wanton or reckless conduct because Plaintiffs do not allege any facts to support conclusory claims.  (ECF No. 29, PageID #387.)  Further, Defendants argue Plaintiffs "lump all the Individual Defendants together . . . and do not allege any specific facts showing that any of the Individual Defendants knew or had reason to know about Greene's alleged misconduct."  (*Id.*)  Review of the second amended complaint largely bears out Defendants' argument.  In the operative paragraphs of the second amended complaint, for example, Plaintiffs make generalized allegations that the individual Defendants had particular duties, failed

15

to exercise proper oversight or supervision of Mr. Greene, turned a blind eye to the circumstances facilitating Mr. Greene's conduct, and matters along those lines.  (*See* ECF No. 22, ¶ 9, 12, 17, 19, 20–28 & 30–33, PageID #243–48.)  Such allegations generally fall short of the fairly low bar Rule 8 sets.

Three allegations merit separate consideration.  First, Plaintiffs allege that Ms. Walton, Mr. Koonce, Ms. Holloway, and Mr. Mazo "failed to implement corrective measures despite having knowledge of a substantial likelihood that Defendant Greene was abusing students."  (*Id.*, ¶ 27, PageID #246–47.)  Second, Plaintiffs allege the individual Defendants failed to conduct a Title IX investigation.  (*Id.*, ¶ 108, PageID #259.)  Third, Plaintiffs allege that the individual Defendants had actual knowledge that Mr. Greene shared hotel rooms with students on school-sponsored trips but failed to conduct any investigation into his conduct.  (*Id.*, ¶¶ 111 & 112, PageID #260.)  Unlike the majority of Plaintiffs' other allegations, these include sufficiently specific detail—if barely—to raise Plaintiffs' claims for relief against the individual Defendants above the speculative level and state a plausible claim for relief on the claims in Count III and Count VI.

### III.B. Pleading Sufficiency of Count V

In Count V, Plaintiffs bring a claim of intentional infliction of emotional distress against Mr. Greene and Ms. Walton, Mr. Koonce, Ms. Holloway, and Mr. Mazo.  (ECF No. 22, PageID #270.)  To establish a claim for intentional infliction of emotional distress, a plaintiff must plead and ultimately prove that:  (1) the defendant knew or should have known his or her actions would result in serious emotional distress; (2) "the defendant's conduct was so extreme and outrageous that

16

it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community"; (3) the defendant's acts or omissions caused psychological injury to the plaintiff; and (4) "the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure." *Morrow v. Reminger & Reminger Co. LPA*, 183 Ohio App. 3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 45 (Ohio Ct. App. 2009) (citing *Ashcroft v. Mt. Sinai Med. Ctr.* (1990), 68 Ohio App.3d 359, 366, 588 N.E.2d 280 (Ohio Ct. App. 1990))

With respect to Ms. Walton, Mr. Koonce, Ms. Holloway, and Mr. Mazo, the second amended complaint contains no allegation that any Plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. Instead, it states facts relating to Mr. Greene's alleged sexual assault of each Plaintiff. To be sure, the second amended complaint alleges conduct so severe that it should not be tolerated in a civilized society. And when it comes to the element of serious mental anguish, one may fairly infer that each Plaintiff suffered mental anguish based on the conduct alleged. But no allegation raises that anguish to the extreme level required to state a claim for intentional infliction of emotional distress. Therefore, the Court determines that the second amended complaint fails to state a claim against these Defendants in Count V.

### III.C. Application of the Exception to Statutory Immunity

Although the allegations in Counts III and VI state claims for relief against the individual Defendants, the question remains whether the conduct alleged meets the high bar under Ohio law to fall within the relevant exception to statutory immunity for public employees. On Defendants' motion to dismiss, construing the

allegations in the second amended in complaint in Plaintiffs' favor, as the Court must, the Court cannot say that individuals with actual knowledge of a demonstrated risk of sexual assault who failed to take any action to address that risk does not as a matter of law meet the standard of wanton or reckless conduct under Ohio law.  In discovery, the evidence may or may not bear out those allegations.  But at this stage of the proceedings, Plaintiffs' allegations suffice to invoke the exception to statutory immunity for public employees under Section 2744.03(A)(6)(b) of the Ohio Revised Code.

## IV.    Default Judgment Against Mr. Greene

Plaintiffs seek a default judgment against Mr. Greene.  (*See* ECF No. 25.) According to the docket, Mr. Greene was served with a copy of the summons and complaint on August 4, 2020.  (*See* ECF No. 8.)  His deadline to respond to the complaint came and went long ago under Rule 12(a)(l)(A)(i).  The record also shows that Plaintiffs made additional efforts to secure Mr. Greene's participation in the litigation.  (*See* ECF Nos. 25-2 & 25-3.)  To date, Mr. Greene has failed to file any responsive pleading, nor has he appeared or any appearance been made on his behalf. Therefore, the Court finds that Mr. Greene is in default and **GRANTS** Plaintiffs' motion for default judgment.  (ECF No. 25.)

However, Plaintiffs claims against Defendant Greene is not for a sum certain or for a sum that can be made certain by computation.  (ECF No. 25, PageID #324.) Therefore, on Plaintiffs' motion, and pursuant to Rule 55(b)(2), the Court will hold a hearing to determine the damages Plaintiffs suffered on a date to be determined later.

## CONCLUSION

For the foregoing reasons, the Court determines that the proper statute of limitations for Plaintiffs' claims under Title IX in Count I and Count II is twelve years.  Therefore, the Court **DENIES** Defendants' motion to dismiss these counts of the second amended complaint.  Additionally, the Court **DENIES** Defendants' motion to dismiss Count III and **GRANTS** Defendants' motion to dismiss Count V (except as to Mr. Greene) and Count VI.

Finally, the Court **GRANTS** Plaintiffs' motion for default against Mr. Greene on Count IV and the other counts asserted against him.

**SO ORDERED.**

Dated:  April 9, 2021

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio

19