UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE 1, *et al.*, ) | Case No. 1:20-cv-01695 |
| ) | |
| Plaintiffs, ) | Judge J. Philip Calabrese |
| ) | |
| v. ) | Magistrate Judge |
| ) | William H. Baughman, Jr. |
| THE CLEVELAND ) | |
| METROPOLITAN SCHOOL ) | |
| DISTRICT BOARD OF ) | |
| EDUCATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

# OPINION AND ORDER

Defendants seek reconsideration of the Court's ruling determining the statute of limitations applicable to Plaintiffs' claims against the Cleveland Metropolitan School District Board of Education under Title IX. CMSD renews its argument for using Ohio's general two-year statute of limitations for personal injury actions that applies to claims under 42 U.S.C. § 1983, rather than the twelve-year limitations period found in Section 2305.111(C) of the Ohio Revised Code for claims of child sexual assault. This request urges the Court to substitute its judgment for that of the legislators who enacted a longer limitations period for the types of claims Plaintiffs assert. The law recognizes that Section 1983 and Title IX are different statutes that serve different ends. Most significantly, Title IX creates substantive rights where Section 1983 does not. Therefore, simply exporting the limitations period from Section 1983 to Title IX is not necessarily appropriate. When borrowing a limitations period from State law, the most analogous statute applies as a matter

of federal law.  Here, that is the twelve-year period of Section 2305.111(C).  For these reasons, as more fully explained below, the Court **DENIES** Defendants' motion for partial reconsideration.  (ECF No. 36.)

## ANALYSIS

Although the rules do not formally provide for reconsideration, the reasons for altering or amending a judgment under Rule 59 or for obtaining relief from a judgment under Rule 60 generally delineate the circumstances under which a court will grant reconsideration.  This is so even though, strictly speaking, "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revisited at any time before the entry of judgment[.]"  Fed. R. Civ. P. 54(b); *see also Desai v. Geico Cas. Co.*, ___ F. Supp. 3d ___, ___, 2021 WL 2069546, at *4 (N.D. Ohio 2021).

Justifying reconsideration requires a moving party to:  (1) demonstrate an intervening change in the controlling law; (2) establish that new evidence is available; or (3) prove that a clear error occurred or reconsideration is necessary to prevent manifest injustice.  *See Louisville/Jefferson Cnty. Metro. Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009).  A district court retains discretion to entertain such a motion. *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 n.7 (6th Cir. 2004).  Further, a district court does not abuse its discretion in denying a motion for reconsideration when it is premised on evidence or arguments available to the party at the time of the original judgment.  *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989).

I.  **Grounds for Reconsideration**

CMSD seeks reconsideration based on what it claims is new authority:  (1) a recent ruling from the Eastern District of Michigan, and (2) decisions from other Circuits.

**I.A.**  *Forrester* **(E.D. Mich.)**

On May 6, 2021, the Eastern District of Michigan rejected application of Michigan's ten-year limitations period to claims under Title IX similar to those Plaintiffs assert here in favor of the State's general statute of limitations for personal injury actions.  *Forrester v. Clarenceville School District*, ___ F. Supp. 3d ___, ___, 2021 WL 1812700, at *3 (E.D. Mich. 2021).  In doing so, the court simply applied *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 729 (6th Cir. 1996):  "Like constitutional claims brought under § 1983, the applicable statute of limitations for Title IX claims is 'the state personal injury limitations period.'"  *Id*. at ___ (quoting *Lillard*, 76 F.3d at 729).  *Forrester* did not discuss *Lillard* beyond quoting it.

In *Lillard*, the narrow issue before the Sixth Circuit was whether a 180-day deadline for administrative claims or a two-year limitations period applied to Title IX claims.  *Lillard* did not speak to selecting between a State's general personal injury limitations period and a more analogous statute of limitations (whether longer or shorter).  Indeed, when the Sixth Circuit decided *Lillard*, only one Circuit had addressed the proper limitations period for claims under Title IX.  *See Lillard*, 76 F.3d at 729 (discussing *Bougher v. University of Pittsburgh*, 882 F.2d 74, 77 (3d Cir. 1989)). At the time, courts debated between the 180-day administrative deadline and a limitations period borrowed from State tort law.  But the Sixth Circuit did not

3

directly or impliedly address the question CMSD raises which involves choosing between competing State limitations periods. By simply invoking *Lillard*, the ruling in *Forrester* offers little guidance and provides, at best, a slender reed for reconsideration.

### I.B. Other Circuits

In seeking reconsideration, CMSD lists more than a page of authorities from other Circuits applying the limitations period from Section 1983 claims to Title IX. (ECF No. 36-1, PageID #433–34.) Not one of these authorities is actually new. Upon examination, each relies on the same authorities the Court previously discussed. Therefore, no intervening change of law justifies reconsideration.

### II. Error of Law

At bottom, CMSD maintains the Court's ruling amounts to a clear error of law. Reasonable people may disagree whether the most analogous statute of limitations available under State law applies to claims under Title IX in favor of a general tort limitations period. Analysis of the key precedents and legal principles leaves the Court of the view it previously expressed.

### II.A. Limitations Period Under Section 1983

Although the Court previously discussed them (ECF No. 31, PageID #407–08), CMSD argues that the Supreme Court's decisions in *Wilson v. Garcia*, 471 U.S. 261 (1985), and *Owens v. Okure*, 488 U.S. 235 (1989), compel use of Ohio's two-year limitations period and not the twelve-year statute of limitations for claims of childhood sexual abuse.

Without question, after *Wilson* and *Owens* a two-year limitations period would apply to any claim under Section 1983 Plaintiffs wanted to assert against Defendants on the facts alleged in the second amended complaint. In *Wilson*, however, the Supreme Court did not rule that the limitations period for personal injury actions applies to every claim under Section 1983. Rather, the Supreme Court directed use of "the one most appropriate statute of limitations" for all Section 1983 claims within a particular State. 471 U.S. at 275. Although *Wilson*'s holding is limited to use of the limitations period for personal injury actions in preference to a State's residual statute of limitations, *id*. at 278, the decision did not disturb the principle that Section 1983 borrows "the one most analogous state statute of limitations," *id*. at 268 (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 488 (1980)).

However, in *Owens*, the Supreme Court addressed the broader question of what limitations period should apply to a Section 1983 action where a State has one or more statutes of limitation for certain enumerated intentional torts as well as a residual statute for all other personal injury actions. In holding that the residual or general personal injury statute of limitations applies over a more specific one, the Supreme Court acknowledged the "wide spectrum of claims which § 1983 has come to span." *Owens*, 488 U.S. at 249. Because many claims brought under Section 1983 "have no precise state-law analog," the Court reasoned, "applying the statute of limitations for the limited category of intentional torts would be inconsistent with § 1983's broad scope." *Id*. Therefore, the Court arrived at the narrow holding that "courts considering § 1983 claims" should borrow the general or residual statute for

5

personal injury actions where State law provides multiples statute of limitation for personal injury actions. *Id.* at 250.

### II.B. Extending *Wilson* and *Owens* to Title IX

CMSD seeks to extend *Wilson* and *Owens* to Title IX claims. This argument overlooks the differences between Section 1983 and Title IX and does not account for the reasoning of *Wilson* or *Owens*.

#### II.B.1. Statutory Interpretation

Section 1983 and Title IX are distinct statutes that serve different purposes. Generally, Congress enacted Section 1983 during Reconstruction to provide a federal remedy for State violations of rights secured under the Constitution or federal law. *See, e.g.*, *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). In this respect, the statute does not create substantive rights but a means of redress.

In contrast, Title IX of the Education Amendments of 1972 creates substantive rights that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see also, e.g.*, *Cannon v. University of Chi.*, 441 U.S. 677, 704 (1979). Because Title IX creates an implied private right of action, *see Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 62–63, 76 (1992), a plaintiff need not sue under Section 1983 to obtain redress for an alleged Title IX violation.

The Supreme Court has explained the differences between the substantive protections guaranteed under Title IX and the Equal Protection Clause (which a plaintiff may enforce through the means of redress Section 1983 provides). *See*

6

*Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009). In short, "Title IX's protections are narrower in some respects and broader in others." *Id.* For example, Title IX does not reach some conduct that may be subject to constitutional challenge:

> Title IX exempts from its restrictions several activities that may be challenged on constitutional grounds. For example, Title IX exempts elementary and secondary schools from its prohibition against discrimination in admissions, § 1681(a)(1); it exempts military service schools and traditionally single-sex public colleges from all of its provisions, §§ 1681(a)(4)-(5). Some exempted activities may form the basis of equal protection claims. See *United States* v. *Virginia*, 518 U.S. 515, 534 (1996) (men-only admissions policy at Virginia Military Institute violated the Equal Protection Clause); *Mississippi Univ. for Women* v. *Hogan*, 458 U.S. 718, 731 (1982) (women-only admission policy at a traditionally single-sex public college violated the Equal Protection Clause).

*Id.* at 257.

Moreover, even where a plaintiff may pursue claims under both Title IX and the Equal Protection Clause (through Section 1983), "the standards for establishing liability may not be wholly congruent." *Id.* For example, "a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference," but a similar claim brought under Section 1983 "must show that the harassment was the result of municipal custom, policy, or practice." *Id.* at 257–58 (citing *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290 (1998), and *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). And Section 1983 requires that an employee commit an underlying violation. *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 511 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). For these reasons, the Supreme Court recognizes

7

that both statutes provide different avenues for pursuing claims of sex discrimination. *Id.* at 258.

Additionally, the statutes have important differences in those they cover. Title IX covers institutions and programs that receive federal funds, including private institutions, but does not authorize suit against school officials, teachers, or other individuals. *Id.* at 256; *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640–41 (1999); 20 U.S.C. § 1681(c). In contrast, Section 1983 claims alleging violation of the Equal Protection Clause only cover State actors but may be brought against individuals. *Fitzgerald*, 555 U.S. at 257 (citation omitted). In the final analysis, the Supreme Court holds that Title IX is not "a substitute for § 1983 suits as a means of enforcing constitutional rights." *Id.* at 258. Based on the differences between the two statutes, simply using the same limitations period for each would not necessarily advance congressional intent or give effect to the ends each aims to serve.

### II.B.2. The Reasoning of *Wilson* and *Owens*

Relying on *Wilson* and *Owens* to argue for applying Section 1983's limitations period to claims under Title IX also overlooks the nature of the claims at issue in *Wilson*. In *Wilson*, the Supreme Court noted that Section 1983 permits plaintiffs to bring a variety of constitutional claims, ranging from "discrimination in public employment" to "the seizure of chattels." *Wilson*, 471 U.S. 261 at 273. Therefore, the Supreme Court observed, the statute of limitations question may not turn on the "precise legal theory of each claim" without causing significant confusion and taxing judicial resources. *Id.* at 273–74. In short, the concerns underlying the Supreme Court's decision in *Wilson* do not extend to the Title IX context because Title IX

8

permits a narrower range of claims unified by the statute's common prohibition of discrimination because of sex. Moreover, because Section 1983 does not create substantive rights, its limitations period provides a uniform outer temporal boundary for redress of claimed constitutional violations. For these reasons, the same interests in judicial economy which Defendants highlight lack the same force in Title IX cases.

Similarly, CMSD argues that *Owens* applies to all federal civil rights claims—whether arising under Section 1983, Title IX, or presumably other statutes too. CMSD relies on a footnote in *Owens* in which the Supreme Court string cites examples of States enacting multiple statutes of limitations for intentional torts; that is, the same State enacting various different limitations periods that might arguably apply to the broad range of claims actionable under Section 1983. *See Owens*, 488 U.S. at 244 n.8. In other words, the point of the footnote was to demonstrate the potential confusion and interests of judicial economy *Wilson* highlighted.

Of the fifty-five State statutes listed in that footnote, one—from Washington—enacts a specific limitations period for claims of childhood sexual abuse separate from that State's general tort statute of limitations. In context, it is difficult to read a glancing reference in a footnote about Section 1983 as the Supreme Court rejecting the use of a specialized childhood sexual assault limitations period under Title IX. Moreover, as in *Wilson*, the Supreme Court expressly predicated *Owens* on the rationale of providing clear direction to courts and litigants in the face of the multiplicity of claims available under Section 1983. "Potential § 1983 plaintiffs and defendants . . . can readily ascertain, with little risk of confusion or unpredictability,

9

the applicable limitations period in advance of filing a § 1983 action." *Id.* at 248. Again, that rationale does not translate so readily to the narrower range of claims available under Title IX, particularly in a case like this one that does not assert Section 1983 claims against individual defendants.

### II.B.3. The Lower Courts

The Sixth Circuit has yet to address the question CMSD raises. However, analysis of those courts that have supports using the most analogous limitations period available under State law, not the general or residual statute of limitations for tort claims as under Section 1983.

### II.B.3.a. CMSD's Authorities

At its strongest, CMSD's argument marshals more than a page of other authorities it maintains apply Section 1983's limitations period or a State's general limitations period for personal injury claims to Title IX. (ECF No. 36-1, PageID #433–34.) These cases offer less than meets the eye. Although CMSD could have (and in a few cases actually did) argue these same authorities in its motion for judgment on the pleadings, the Court nonetheless briefly addresses these cases to explain why, with one exception, these cases do not support the approach for which CMSD advocates.

> *Curto v. Edmundson*, 392 F.3d 502 (2d Cir. 2004) (per curiam). Unlike here, this case does not involve choosing between competing limitations periods. Instead, the court simply noted that Title IX does not have its own statute of limitations, then cited *Lillard* (among other circuit court cases) in holding that the Second Circuit borrows a State's personal injury statute of limitations for Title IX claims. *Id.* at 504. This conclusion, the court ruled, accords with the practice of borrowing the "most closely analogous" limitations period. *Id.*

10

*Shine v. Bayonne Bd. of Educ.*, 633 F. App'x 820 (3d Cir. 2015). This case also does not involve competing statutes of limitations. In fact, the only analysis of the statute of limitations came when the Third Circuit recognized that Title IX and Section 1983 do not have specific statutes of limitations, such that the court borrows New Jersey's two-year limitations period for personal injury torts. *Id.* at 823.

*Wilmink v. Kanawha Cnty. Bd. of Educ.*, 214 F. App'x 294 (4th Cir. 2007) (per curiam). In this case involving a sexual assault claim against a former teacher of the plaintiff, the Fourth Circuit applied West Virginia's statute of limitations for personal injury claims instead of the limitations period for employment claims. *Id.* at 295–96. Other than rejecting various tolling doctrines, the opinion merely notes that "every circuit to consider the issue has held that Title IX also borrows the relevant state's statute of limitations for personal injury." *Id.* at 296 n.3 (citing *Lillard*, among other cases). But the Fourth Circuit did not hold that the statute of limitations for a personal injury claim applies to claims under Title IX in preference to the period for more analogous State-law claims.

*Cetin v. Purdue Univ.*, Nos. 94-3112 & 95-1254, 1996 U.S. App. LEXIS 20096 (7th Cir. Aug. 7, 1996). The court cites *Lillard* for the proposition that personal injury statutes of limitation apply to Title IX claims, but did not do so in the context of analyzing which of conflicting State-law limitations periods applies under Title IX. *Id.* at *8. Further, the procedural posture limits the value of this authority. The issue arose on a post-judgment motion following dismissal of the plaintiff's Title IX claim. Although the district court did not rule that the claim was time-barred, the appellate court held that the plaintiff had failed to show she had a viable claim in any event.

*Stanley v. Trustees of the Cal. State Univ.*, 433 F.3d 1129 (9th Cir. 2006). Affirming dismissal of a Title IX claim on statute of limitations grounds, the Ninth Circuit followed other circuits in holding that a State's statute of limitations for personal injury claims applies to Title IX as a civil rights statute. *Id.* at 1134–35. But the discussion of the issue, like *Lillard*, rejects use of the 180-day administrative deadline in favor of the limitations period for personal injury claims—not use of the statute of limitations for personal injury claims in preference to other more analogous tort claims. Indeed, the Ninth Circuit articulated the rule that civil rights statutes "borrow the most appropriate state statute of limitations." *Id.* at 1134 (citations omitted).

*Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208 (10th Cir. 2014). In this case, the court conducted no independent analysis of the issue presented here. Instead, the court applied the same statute of limitations to Title IX claims as

11

it does to Section 1983 claims because "that appears to be the uniform rule of the other circuits." *Id.* at 1213.

*M.H.D. v. Westminster Schs.*, 172 F.3d 797, 803 (11th Cir. 1999). In a case involving a Title IX claim for sexual abuse, the Eleventh Circuit affirmed use of Georgia's two-year statute of limitations for personal injury claims. *Id.* at 803. However, perhaps because of the breadth of the Georgia statute, the case did not involve a more specific or more closely analogous specialized statute of limitations for childhood sexual abuse.

*Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615 (8th Cir. 1995). Citing *Wilson* for the principle that the most analogous State limitations period applies to Title IX claims, the Eighth Circuit used Minnesota's six-year personal injury statute of limitations in preference to the one-year period of the State's Human Rights Act. *Id.* at 618. The court did so by determining that Title IX is more closely analogous to a personal injury claim than an employment action, but it did not speak to competing limitations periods for different types of personal injury claims. *Id.*

Only one case on which CMSD relies speaks to the issue presented. In *King-White v. Humble Independent School District,* 803 F.3d 754 (5th Cir. 2015), the plaintiff brought claims under both Title IX and Section 1983 arising from an alleged sexual assault at a school. Under Texas law, a two-year statute of limitations governs personal injury actions, and a five-year limitations period applies to claims for sexual assault. *Id.* at 758. In determining which limitations period to apply, the Fifth Circuit took two important steps in the analysis. First, the court held that "Title IX is subject to the same limitations period as § 1983." *Id.* at 759 (citations omitted). In this respect, the Fifth Circuit found *Egerdahl* persuasive and extended the reasoning of *Wilson* and *Owens* to Title IX. *Id.* In doing so, however, the court did not discuss the distinction in *Egerdahl* between employment and personal injury claims or note that *Egerdahl* did not involve competing analogous limitations periods as did *King-White.* Nor did the court address the aspects of *Wilson* and *Owens* that counsel

12

against their reflexive extension without reference to the differing statutory text and purpose of Title IX and Section 1983.

Second, the court turned to the choice between the general two-year personal injury statute of limitations and the more specific five-year period for sexual assault claims. In this regard, the Fifth Circuit relied on *Owens* to conclude that the former governs the limitations period under Section 1983. *Id.* at 761. In doing so, however, the court did not discuss which period should apply to claims under Title IX beyond its earlier determination that Title IX and Section 1983 use the same limitations period. And the Fifth Circuit did not explain why the limitations period for a statute that creates no substantive rights applies to the substantive rights Congress enacted in a different statute Congress to advance the particular goal of combatting sex discrimination.

On closer inspection, then, *King-White*—like CMSD's entire argument—turns on extending *Wilson* and *Owens* to Title IX, which is a reasonable argument, but an unpersuasive one. Most of these authorities trace back to the earliest cases, like *Lillard*, that arose in a different context (the debate between the administrative deadline and a State personal injury statute) then reaffirm that general principle in cases divorced from that context, citing or extending *Wilson* and *Owens* without much, if any, examination of the differences between Title IX and Section 1983. Further, these cases provide little, if any, analysis whether, as a matter of federal law, a State statute of limitations for sexual assault is more analogous to Title IX claims than a general personal injury or other residual limitations period. Moreover,

13

most of the cases on which CMSD relies pre-date *Fitzgerald*, where the Supreme Court explained the differences between Section 1983 (as a vehicle for asserting equal-protection claims) and the substantive rights of Title IX. Those differences counsel against reflexive use of the same limitations period for the two statutes. But even after *Fitzgerald*, most courts appear to treat the two statutes the same for limitations purposes, with little explanation.

### II.B.3.b. Other Authorities

Many of CMSD's cases stand for little more than the axiomatic principle that federal courts apply the most analogous State statute of limitations as a matter of federal law. When it comes to Title IX, this principle leads to application of different limitations periods. That is, courts do not elevate the concern for uniformity expressed in *Wilson* to Title IX's substantive rights. A few examples illustrate the point.

In *Washington v. University of Md.*, No. RDB-19-2788, 2020 U.S. Dist. LEXIS 176009, at *8 (D. Md. Sept. 24, 2020), the court borrowed Maryland's statute of limitations for employment claims and rejected use of the personal injury limitations period to sexual harassment claims a former employee brought. In doing so, the court distinguished the Fourth Circuit's decision in *Wilmink*, which it said "is best understood in relation to the nature of the claim before it. Confronted with a student's sexual assault claim, it would have been incongruous for the Fourth Circuit to apply the limitations period of a state law prohibiting discrimination in employment." *Id.* at *10.

14

Similarly, the federal courts in Pennsylvania apply the Commonwealth's tolling statute for childhood sexual assault claims to both Section 1983 and Title IX. *See Viney v. Jenkintown Sch. Dist.*, 51 F. Supp. 3d 553, 555–56 (E.D. Pa. 2014); *K.E. v. Dover Area Sch. Dist.*, No. 1:15-CV1634, 2017 WL 4347393; (M.D. Pa. September 29, 2017). Although the various cases addressing the matter are less persuasive than the differing statutory text and purposes of Section 1983 and Title IX, on balance the case law supports borrowing the most analogous limitations period from State law for a claim under Title IX. Here, that period is the twelve-year statute of limitations found in Section 2305.111(C).

### II.B.4. Other Considerations

Finally, CMSD's argument that the Court should extend *Wilson* and *Owens* to Title IX claims runs headlong into two additional problems worth a brief mention.

First, CMSD's argument runs afoul of a basic principle of statutory interpretation. CMSD would have the Court borrow a general statute of limitations for personal injury claims over a statute specifically enacted to address the claims at issue here, even though "[i]t is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992).

Second, failing to use the governing principle of federal law that requires borrowing the most analogous limitations period creates opportunities for forum-shopping and gamesmanship. Depending on the facts and circumstances of particular cases, plaintiffs or defendants may well use differing limitations periods in procedural fencing of various kinds. Indeed, such a rule would encourage such

15

behavior at great costs to the parties and to the courts. Instead, courts and counsel should focus on resolving cases on the merits. In the Court's view, borrowing the most analogous limitations period of State law—not importing a judicially created time bar from a different statute—provides the best opportunity to minimize these concerns.

## CONCLUSION

In the end, CMSD asks courts to substitute their judgment of the proper limitations period for claims under Title IX for that of elected legislators. Although Congress did not enact a statute of limitations, borrowing the most analogous limitations period available under State law respects the proper role of the judicial department in our constitutional system. In this case, Section 2305.111(C) supplies the most analogous limitations period. For all the foregoing reasons, as well as those in its original ruling, the Court **DENIES** CMSD's motion for partial reconsideration. (ECF No. 36.)

**SO ORDERED.**

Dated: August 2, 2021

J. Philip Calabrese
United States District Judge
Northern District of Ohio